UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BLACK DONUTS, INC., a California corporation, et al. | ) ) ) | CV 10-0454 SVW (SSx) |
| Plaintiffs, | ) ) | ORDER GRANTING PLAINTIFFS' MOTION TO REMAND CASE [13] |
| v. | ) ) | [JS-6] |
| SUMITOMO CORPORATION OF AMERICA, a New York Corporation, et al. | ) ) ) | |
| Defendants. | ) ) | |

**I.    INTRODUCTION**

    This is a franchise dispute brought by a number of plaintiffs, all of whom are California individuals or entities, against three non-California corporations (including franchisor Big O Tires LLC and its "corporate relative" TBC Corporation) and six current and former employees alleged to be citizens of California.

    Although the Complaint includes claims by California plaintiffs against California defendants, the Defendants removed the case on the ground that the California defendants are "sham defendants" who were "fraudulently joined" to defeat diversity jurisdiction.  Plaintiffs

have moved to remand the case to state court.

In their Motion to Remand and their Reply to Defendants' Opposition, Plaintiffs create sufficiently genuine disputes to defeat removal.  There is at least one valid claim against a defendant who is a citizen of California.  Because there is not complete diversity of citizenship, this Court lacks jurisdiction under 28 U.S.C. § 1332. Remand is appropriate.

**II.  BACKGROUND**

    **A.   The Dispute**

The case involves a number of franchise-related disputes involving a franchisor known as "Big O Tires."  Essentially, Plaintiffs (who consist of a wide range of franchisees from different parts of California) bring various causes of action against Defendants Big O Tires, its corporate parent TBC Corp., Sumitomo Corp. of American (which acquired TBC Corp. in 2005), and a handful of individual agents of Big O Tires.

Plaintiffs allege that Defendants fraudulently induced Plaintiffs to enter franchise agreements with Defendant by misrepresenting the level of marketing support, training support, pricing of goods and services, and that Defendants generally treated different franchisees unequally and unfairly.  Plaintiffs also allege that Defendants give preference to the Big O Tire stores owned by Defendants themselves.  In total, Plaintiffs bring ten causes of action: (1) Declaratory Relief; (2) Breach of Written Contract; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Interference with Contractual Rights and Prospective Economic Advantage; (5) Fraud in the Inducement; (6)

Negligent Misrepresentation; (7) Violation of Cal. Unfair Practices Act, Cal. Bus. & Prof. Code § 17045 et seq.; (8) Negligent Hiring, Firing and Supervision; (9) Violation of Cartwright Act; and (10) Violation of Cal. Business and Professions Code § 17200, et seq.

**B.   Individual Defendants**

Plaintiffs name Duane Freshknock, Craig McDonald, Art Beahm, Marvin Hayes, Bill Ketchem, and Greg Roquet as individual defendants. Plaintiffs assert that these Defendants are present or former employees of Defendants Big O Tires or TBC Corporation, and describe them as citizens and residents of California.  (Compl. ¶ 29.)[1]

**C.   Plaintiffs' Claims Against the Individual Defendants**

Plaintiffs bring six claims against the individual defendants (see Pls.' Mot. to Remand ["Pls.' Mot."], at 2; Defs.' Opp. to Mot. to Remand ["Defs.' Opp."], at 7):

1) Plaintiff Sullivan's claim against Defendant Roquet (Fraud in the Inducement);

2) Plaintiff Sullivan's claims against other Individual Defendants (Fraud in the Inducement);

3) Plaintiff Fuller's claims against other Individual Defendants (Fraud in the Inducement);

4) Various Plaintiffs' claims against other Individual Defendants (Negligent Misrepresentation);

5) Plaintiff T. Nasrallah's claim against Defendant McDonald (Cartwright Act Violations);

---

[1] In declarations filed with Defendants' Opposition to the Remand Motion, Beahm and Ketchem assert that they are actually residents of Utah and Florida, respectively.  These facts do not affect the Court's analysis.

6) Plaintiffs Felix and Raach's claims against Defendants Hayes, Ketchem, and Beahm (Violation of Cal. Bus. & Prof. Code, § 17045).

**D.   Procedural History**

Plaintiffs filed this case in Los Angeles Superior Court on December 2, 2009.  Defendants received notice of the action on December 22, 2009, and removed the action to this Court on January 21, 2010. Defendants filed three separate motions to dismiss on January 28, 2010, Plaintiff filed a motion to remand on February 1, 2010, and the Court held a hearing on all four motions on March 1, 2010.[2]

---

[2] At oral argument, the Court stated that it would deny Plaintiffs' Motion to Remand.  The Court believed at the time that the sole issue was whether the individual Defendants' actions were "motivated by the agent's own financial gain."  See, e.g., Edo Reconnaissance and Surveillance Sys., Inc. v. Phoenix Logistics, Inc., No. 05-2789 JF (PT), 2006 WL 2038058, at *4 (N.D. Cal. July 17, 2006) (citing Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1123-24 (C.D. Cal. 2003) (collecting cases)); accord Ayu's Global Tire, LLC v. Sumitomo Corp., No. CV 09-7165 RGK (PLAx), 2009 WL 4823867 (C.D. Cal. Dec. 11, 2009) ("In the Opposition, Defendants' argument rests primarily on case law stating that personal advantage or gain must be over and above ordinary professional fees earned as compensation from an employer.  Defendants then argue that Plaintiff failed to allege the Individual Defendants received any such advantage from their alleged conduct.").  However, upon further examination of the relevant caselaw (almost entirely ignored by the parties in their briefs and at oral argument), it became evident that the individual Defendants' pecuniary relationship to the entity Defendants is no longer controlling.

As a second procedural matter, the Court notes that Defendants have objected to Plaintiffs' filing a Reply memorandum and declaration.  [Defs.' Objection, Docket no. 16.]  Defendants argue that these documents are inconsistent with this Court's standing Order re: Status Conference, which states: "If this case was removed from state court and if plaintiff wants to seek a remand, plaintiff's counsel should file an Ex Parte Application for Remand no later than fourteen (14) days prior to the [New Case Status] conference." [Docket no. 8.]  Defendants argue that Plaintiffs violated the New Case Order by filing a Noticed Motion rather than an Ex Parte Application.

Defendants' request to strike Plaintiffs' Motion and/or Plaintiffs' Reply is DENIED.  The purpose of the New Case Order's time requirement is that decisions to remand a case must be made at

4

III.   **LEGAL STANDARD GOVERNING REMOVAL AND REMAND**

The threshold question in this case, as in all cases, is whether the Court's exercise of jurisdiction is proper.  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194-95 (9th Cir. 1988); see also Hertz Corp. v. Friend, 559 U.S. __, slip op. at 15 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists[.]") (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)).

Here, Defendants removed the action pursuant to 28 U.S.C. § 1441(b), which permits removal under this Court's diversity jurisdiction, 28 U.S.C. § 1332.  Generally, "[t]he presence of the nondiverse party automatically destroys original [subject matter] jurisdiction." Wis. Dept. of Corrections v. Schacht, 524 U.S. 381, 389 (1998).  However, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987); see also Zogbi v. Federated Dept. Store, 767 F. Supp. 1037,

the earliest possible opportunity.  By inviting an ex parte application, the Court aims to decide all jurisdictional issues prior to or immediately following the New Case Status Conference.  Here, the New Case Status Conference was scheduled for March 1, 2010, and Plaintiffs' Motion to Remand was scheduled for the same date.  Because Plaintiffs acted expeditiously in filing their Motion to Remand, they were able to file a Noticed Motion and then take advantage of the additional time to give themselves an opportunity to file a Reply.  Notably, Defendants fail to identify any prejudice they have suffered as a result of Plaintiffs' use of the Noticed Motion procedure rather than the Ex Parte procedure.  (Indeed, Defendants cannot argue that they are prejudiced, as Plaintiffs' Reply papers are largely unhelpful to the Court.)  In any event, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists." Hertz Corp. v. Friend, 559 U.S. __, slip op. at 15 (2010) (citing Arbaugh v. Y & H Corp., 546 U. S. 500, 514 (2006)).  In order to carry out this obligation, the Court will consider Plaintiffs' Reply and supporting materials.

1041 (C.D. Cal. 1991).  Such fraudulently joined "sham defendants" are disregarded for purposes of determining subject matter jurisdiction, and the Court's exercise of diversity jurisdiction is proper.  See McCabe, 811 F.2d at 1339.  But if the defendant is not fraudulently joined, the case should be remanded to state court pursuant to 28 U.S.C. § 1447(c).  See Hunter v. Philip Morris USA, 582 F.3d 1039, 1048 (9th Cir. 2009).

In applying the fraudulent joinder rule, it should be emphasized that the state law must be "settled" and the complaint's deficiency must be "obvious."  See McCabe, 811 F.3d at 1339.  These standards reflect the "general presumption against fraudulent joinder" that complements the "strong presumption against removal jurisdiction." Hunter, 582 F.3d at 1046.  Federal courts "strictly construe the removal statute against removal jurisdiction," such that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted); see also Cal. ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004).

In order to determine if a defendant is properly joined, the Court may consider extrinsic facts "showing the joinder to be fraudulent." McCabe, 811 F.2d at 1339.  In quoting from the Fifth Circuit's decision in Smallwood v. Illinois Central Railroad Co., 385 F.3d 568, 576 (5th Cir. 2004) (en banc), cert. denied, 544 U.S. 992 (2005), the Ninth Circuit has endorsed the view that, while the court may consider facts outside the complaint, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  Hunter,

582 F.3d at 1044 (quoting Smallwood, 385 F.3d at 573-74).  The Ninth Circuit further explained that "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper," and "an inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."  Id. (quoting Smallwood, 385 F.3d at 573-74).

Under these principles, federal courts in this circuit have applied the fraudulent joinder rule only in cases where it is undisputably clear (or "obvious," in the language in McCabe) that the plaintiff states no cause of action against the non-diverse defendant. See, e.g., Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067-68 (9th Cir. 2001) (affirming finding of fraudulent joinder in negligent misrepresentation action where nondiverse defendant's alleged misrepresentation was "devoid of any meaningful specificity," plaintiffs' past actions established that they "could not have reasonably relied upon such statement in any event," and a plaintiff's own affidavit "specifically denied that she ever discussed" the alleged matters with the defendant); Kruso v. Int. Tel. & Teleg. Co., 872 F.2d 1416, 1427 (9th Cir. 1989) (affirming finding of fraudulent joinder where "none of the plaintiffs were personally involved in any of the transactions in question," which "deprives plaintiffs of standing to sue defendants"); McCabe, 811 F.2d at 1339 (affirming finding of fraudulent joinder in tortious interference with contract action where nondiverse defendants had acted in managerial capacity and California law privileges agents' conduct done on principal's behalf in interference with contract actions) (citing Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 328 (9th Cir. 1982)); Maffei v. Allstate Cal.

Ins. Co., 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006) (dismissing claims against nondiverse corporate defendant where evidence showed that defendant "has never conducted any business of any kind anywhere, has never been capitalized, has never had any assets, . . . has never had any employees, offices, or operations of any kind, . . . [and] in short, . . . is nothing more than an empty corporate shell created in anticipation of a business plan that was never carried out.") (internal quotations omitted); Brown v. Allstate Ins. Co., 17 F. Supp. 2d 1134, 1136-37 (S.D. Cal. 1998) (dismissing claims against nondiverse individual defendants where defendants were named in complaint caption and headings but "no material allegations against these defendants are made" and defendants' names were entirely absent from "the body of the complaint [due to] a typographical error"); Gasnik v. State Farm Ins. Co., 825 F. Supp. 245, 249 (E.D. Cal. 1992) (dismissing claims against nondiverse individual insurance agent where agent's relationship to plaintiff arose solely out of negotiation and execution of insurance contract; settled and obvious law provides that agents are not liable on contracts where they fully disclose the existence and identity of their principal) (citing Lippert v. Bailey, 241 Cal. App. 2d 376, 382 (1966); Cal. Labor Code § 2802)); Zogbi v. Federated Dept. Store, 767 F. Supp. 1037, 1041-42 (C.D. Cal. 1991) (dismissing claims for breach of employment contract against nondiverse individual defendants, as defendants were plaintiff's managers and were not parties to the employment contract).

Basic "principles of comity and federalism," as well as the ever-important consideration of judicial economy, counsel that fraudulent joinder should not provide defendants with a "broad[] license to escape

from state court." Smallwood, 385 F.3d at 576; see also Albi v. Street & Smith Publications, 140 F.2d 310, 312 (9th Cir. 1944) ("In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court."). Parties should not be able to expand federal jurisdiction beyond its statutory boundaries by using fraudulent-joinder-based removal as a replacement for the state court demurrer.

Additionally, when there are multiple defendants and the plaintiff's complaint states factually similar allegations against all of the defendants, a finding of fraudulent joinder is necessarily intertwined with the substantive merits of the various causes of action.  In such a case, "there is no improper joinder; there is only a lawsuit lacking in merit. . . .  In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such."  Smallwood, 385 F.3d at 574; see also Hunter, 582 F.3d at 1044-45 (quoting Smallwood for this proposition).  In these situations, a finding of fraudulent joinder "effectively decide[s] the entire case."  Smallwood, 385 F.3d at 571; see also Boyer v. Snap-on Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991) (reversing district court where "the district court, in the guise of deciding whether the joinder was fraudulent, stepped from threshold jurisdictional issue into a decision on the merits.") For purposes of determining whether the court may exercise its diversity jurisdiction, such a merits-based decision is improper.  See Smallwood, 385 F.3d at 575 (citing Chesapeake & O.R. Co. v. Cockrell, 232 U.S. 146, 151-53 (1914); Alabama Great S. Ry. Co. v. Thompson, 200 U.S. 206,

218 (1906)).

**IV.   DISCUSSION**

A.   Sufficiency of the Allegations Against Defendant Roquet

Defendants argue Plaintiffs fail to adequately plead their claims under federal and state pleading standards.  While Defendants have identified a number of potentially viable arguments, at least one of Plaintiffs' claims in the Complaint and Motion to Remand raises a sufficient dispute to defeat Defendants' assertion of fraudulent joinder.

For purposes of this Order, the Court will focus on a single dispute between a California Plaintiff and a California Defendant – Plaintiff Michael Sullivan's claims against Defendant Greg Roquet. (See Compl. ¶¶ 111-23.)  Because these claims are potentially viable, complete diversity is lacking and the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332.

Plaintiffs allege that Defendant Roquet made a number of misleading, misrepresentative, and/or fraudulent statements that induced Plaintiff Sullivan to join the Big O Tire franchise and, after joining the franchise, to invest additional money into it.  (See Compl. ¶¶ 111-23.)

Defendants argue that these allegations of fraud and misrepresentation are generally insufficient under both federal and state pleading standards.  This Court disagrees with Defendants' assertion that the Court should apply the federal pleading standard of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), in the fraudulent joinder context.  (Defs.' Opp. at 7 n.4 (citing Roland-Warren v.

_Sunrise Senior Living, Inc._, No. 09 CV 1199 JM (WMc), 2009 WL 2406356, at *6 (S.D. Cal. Aug. 4, 2009)).  The better analogy seems to be the pre-_Twombly_ "no set of facts" standard of _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."), _abrogated by_ _Twombly_, 550 U.S. at 562-63.  In this vein, the Ninth Circuit has explained that, in deciding fraudulent joinder, the defendant should be able "to show that the individuals joined in the action **cannot be liable on any theory**."  _Ritchey v. Upjohn Drug Co._, 139 F.3d 1313, 1318 (9th Cir. 1998) (emphasis added).  In citing the relevant caselaw, the court emphasized that in a number of cases, the "joinder [was] fraudulent where no cause of action **could be stated**" against the defendants.  _Id._ at 1319 (emphasis added) (citing _Kruso v. Int. Tel. & Teleg. Corp._, 872 F.2d 1416, 1426-27 (9th Cir. 1989); _Gasnik v. State Farm Ins. Co._, 825 F. Supp. 245, 247 (E.D. Cal. 1992)).  More recently, the Ninth Circuit has approvingly quoted from other circuits' holdings to this effect.  _See_ _Hunter_, 582 F.3d at 1044.  In one case, the court held that diversity jurisdiction is lacking "if there is **any possibility** that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint." _Id._ (emphasis added) (quoting _Florence v. Crescent Res., LLC_, 484 F.3d 1293, 1299 (11th Cir. 2007)).  In another case, the court held that diversity jurisdiction is lacking if "there is **no reasonable basis** for predicting that state law would allow the plaintiff to recover against the in-state defendant."  _Id._ (emphasis added) (quoting _Smallwood_, 385 F.3d at 576-77).  In yet another case, the court held that diversity

jurisdiction is lacking "if there is **a possibility** that a state court would find that the complaint states a cause of action against any of the resident defendants." Id. at 1046 (emphasis added) (quoting Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam)).

Rather than applying the Twombly standard, the Ninth Circuit has also looked to state pleading rules to determine if the complaint's deficiency was "obvious." See Hunter, 582 F.3d at 1046 (applying Alaksa notice pleading rules). However, where (as here) the complaint states identical causes of action against both resident and non-resident defendants, it is inappropriate to turn the fraudulent joinder inquiry into a state-court demurrer that "attack[s] the plaintiff's case as such." Id. at 1045 (quoting Smallwood, 385 F.3d at 574). In such situations, "there is no improper joinder; there is only a lawsuit lacking in merit." Id. at 1044 (quoting Smallwood, 385 F.3d at 574). It is improper to turn a preliminary jurisdictional inquiry into a determination of the merits of the plaintiff's entire case. See Boyer v. Snap-on Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991).

Here, the relevant allegations involve both Defendant Sullivan and Defendant MDS Enterprises, Inc. It is appropriate for a state court, not a federal court, to decide in the first instance whether these allegations satisfy the state courts' pleading requirements.[3]

---

[3] In any event, the Court has made a "summary inquiry," see Hunter, 582 F.2d at 1044 (quoting Smallwood, 385 F.3d at 573-74), into the relevant portions of the Complaint. (See Compl. ¶¶ 111-23.) The Court concludes that it is not "obvious" that these allegations fail to satisfy California pleading requirements. See Cal. Code Civ. Proc. § 425.10(a)(1) ("A complaint shall contain . . . [a] statement of the facts constituting the cause of action, in ordinary and

**C.   Whether Roquet and the Other Individual Defendants Can Be Held Liable for Their Conduct**

Defendants' central argument is that the individual Defendants cannot be held liable because they were acting within the course and scope of their employment.  According to Defendants, well-established California law provide clear immunity to the individual Defendants. (Defs.' Opp. at 10-11; <u>see also</u> Defs.' Decls.)

The Court disagrees.  The general rule in California and elsewhere is that an agent is liable for his tortious acts that injure a third party.  Cal. Civ. Code § 2343(3) states that "an agent is responsible to third persons as a principal for his acts in the course of his agency . . . [w]hen his acts are wrongful in their nature."  As explained by the standard treatise on black-letter California law, "[a]n agent or employee is always liable for his or her own torts, whether the principal is liable or not, and in spite of the fact that the agent acts in accordance with the principal's directions."  3 B.E. Witkin et al., <u>Summary of Cal. Law</u> § 199 (10th ed. 2009 supp.) (citing

concise language.")
    Contrary to Defendants' assertions, Plaintiffs' allegations meet the basic requirements that Defendants claim are lacking.  (<u>See</u> Defs.' Opp. at 17 ("A plaintiff must allege 'how, when, where, to whom, and by what means the representations were tendered.'") (quoting <u>Stansfield v. Starkey</u>, 220 Cal. App. 3d 59, 73 (1990).)
    The allegations against Sullivan and MDS Enterprises:
-name the relevant speaker (Greg Roquet and/or MDS Enterprises);
-state when the representations were made or not made ("prior to executing the Agreement for the Oakhurst store," Compl. ¶ 113; "[o]n or around November of 2006," Compl. ¶ 119; "never," Compl. ¶ 115);
-state the contents of the representations or concealments (representations of profit margins and marketing and accounting support, Compl. ¶ 113; concealment of secret high-volume rebate program, Compl. ¶ 115; representations of improved business and efficient operations, Compl. ¶ 119); and
-state scienter and reliance (Compl. ¶ 114), both of which might also reasonably be inferred from the general factual scenario set forth.

Cal. Civ. Code § 2343(3); <u>Perkins v. Blauth</u>, 163 Cal. 782, 787 (1912); <u>Bayuk v. Edson</u>, 236 Cal. App. 2d 309, 320 (1965); <u>Michaelis v. Benavides</u>, 61 Cal. App. 4th 681, 686 (1998)).

This rule is also stated in the Restatement of Agency.  "An agent is subject to liability to a third party harmed by the agent's tortious conduct.  Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."  <u>Restatement (3d) of Agency</u> § 7.01 (2006).

The general rule applies with equal force in the context of fraud and misrepresentation, which are the central wrongs alleged in the Complaint against the individual Defendants.  "An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal."  <u>Restatement (2d) of Agency</u>, § 348 (1958); <u>see also</u> <u>Mars v. Wedbush Morgan Securities</u>, 231 Cal. App. 3d 1608, 1616 (1991) ("Generally, an agent is not held liable for the fraud of a principal, **unless the agent** knows of or **participates in the fraudulent act**.") (emphasis added) (citing, inter alia, <u>Restatement (2d)</u> at § 348); <u>Doyle v. Chief Oil Co.</u>, 64 Cal. App. 2d 284 (1944) (holding corporate officers liable for fraudulently inducing plaintiff to enter contract, because "[h]aving participated in the fraudulent plan, they are liable in damages therefor."); <u>accord</u> 3 Witkin, <u>Summary</u>, § 199(1) ("[A]n agent who commits an independent tort, such as fraud, remains liable despite the fact that the principal, by ratification, also becomes liable.

1  (<u>Hansen v. California Bank</u> (1936) 17 C.A.2d 80, 102, 61 P.2d 794;

2  Rest.2d, Agency §360; <u>see</u> <u>Crawford v. Nastos</u> (1960) 182 C.A.2d 659,

3  665, 6 C.R. 425 [real estate broker negotiated sale of ranch,

4  fraudulently representing water supply]; <u>Lingsch v. Savage</u> (1963) 213

5  C.A.2d 729, 736, 29 C.R. 201 [real estate broker's liability to

6  purchaser for fraudulent concealment of defects in property]; <u>McNeill</u>

7  <u>v. State Farm Life Ins. Co.</u> (2004) 116 C.A.4th 597, 603, 10 C.R.3d 675,

8  citing the text [insurance agent misrepresented amount by which policy

9  premiums would be reduced if insured quit smoking]; 46 A.L.R.4th 546

10 [real estate broker's liability to purchaser for fraudulent concealment

11 of defects in property].").

12      Defendants fail to identify a relevant statutory or common-law

13 exception to the individual Defendants' potential tort liability.

14 Defendants generally argue that the individual Defendants were acting

15 within the scope of their agency relationship and for their principals'

16 benefit.  As Defendants state, "[u]nder the agent immunity rule, agents

17 are not liable for acts undertaken on behalf of their principal within

18 the scope of their agency, unless they received an independent

19 pecuniary gain." (Defs.' Opp. at 10.)  This statement is directly at

20 odds with the general rule discussed in this Order, and Defendants fail

21 to acknowledge the vast weight of black-letter law that contradicts

22 Defendants' assertions.  After examining Defendants' authorities, it

23 appears that Defendants are simply mistaken.  To the extent that

24 Defendants cite to caselaw, these cases are inapposite.  The cases –

25 although they include useful soundbites that appear to support

26 Defendants' position – are simply irrelevant because they involve two

27 discrete exceptions to the general rule of agent liability: (1)

28

tortious interference with contract and (2) agent-principal conspiracies.  (See Defs.' Opp. at 10.)

It is true, as Defendants state, that the court in Weiss v. Wash. Mut. Bank, 147 Cal. App. 4th 72 (2007), stated that an agent-defendant could not be held liable for fraud because he was an "employee who acted within the course and scope of his employment."  Id. at 77.  However, the court was solely addressing issues of federal preemption, not the viability of the fraud cause of action.  Id. at 77.  In addition, the court noted that the "complaint expressly allege[d] that Monahan was at all relevant times acting solely within the course and scope of his employment by Washington Mutual and not for any personal purpose."  Id.  In other words, the case fell within the standard rule that an agent is not liable for his principal's torts.  See Mars v. Wedbush Morgan Securities, 231 Cal. App. 3d 1608, 1616 (1991) ("Generally, an agent is not held liable for the fraud of a principal, unless the agent knows of or participates in the fraudulent act.")  Most notably, the court added in a footnote that, "[w]ith regard to Monahan, we note that Weiss **does not allege that he misrepresented the terms** of the loans (with regard to prepayment penalties or otherwise), only that Weiss believed Monahan was acting on his behalf and thus had an enhanced duty of disclosure."  147 Cal. App. 4th at 77 n.4 (emphasis added).  The obvious implication is that, had the plaintiff alleged a fraud or misrepresentation cause of action against Monahan himself, the individual agent-defendant could have been held liable.  Not only is Weiss inapposite, but the court's discussion is unhelpful to Defendants' position.

Doctors Co. v. Sup. Ct., 49 Cal. 3d 39 (1989), cited by

Defendants, is also irrelevant to the present action.  That case involved the well-established rule that a corporation and its agents generally cannot form a conspiracy.  Id. at 44-45.  The present case, in contrast, does not involve conspiracy allegations.  Berg & Berg Ents, LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 834 (2005), likewise involved an alleged conspiracy between a principal and agent, as did Hanni v. Am. Airlines, No. C 08-0732 CW, 2008 WL 5000237, at *4-5 (N.D. Cal. Nov. 21, 2008).[4]  Another of Defendants' authorities, Mintz v. Blue Cross of Cal., 172 Cal. App. 4th 1594 (2009), expressly noted that "[t]he only question" before the court was "whether the representative of a contracting party may be held liable for the substantive tort of interfering with the contract."  Id. at 1606.  In such cases, the so-called "manager's privilege" immunizes agents from liability for inducing their principals to breach contracts entered into between the principals and third parties.  See Huynh v. Vu, 111 Cal. App. 4th 1183, 1194 (2003).  Contrary to Defendants' apparent position, the "manager's privilege" rule applies only in the context of tortious interference with contract.

Defendants' final authority is the standard Ninth Circuit case on fraudulent joinder.  McCabe v. General Foods, 811 F.2d at 1339, also involved the "manager's privilege" in intentional interference with

---

[4] With respect to Hanni, the Court also notes that California law is not "settled" regarding the effect of bonus- and commission-based compensation on the agent's immunity rule.  The district court in Hanni – which in any event is not a binding authority with respect to state law issues – merely stated that "**[b]y analogy** to Berg & Berg Enterprises, LLC, [131 Cal. App. 4th 802 (2005)], bonuses are not independent pecuniary gain because they are part of the compensation earned by employees from [defendant]."  2008 WL 5000237, at *4 (emphasis added).  Simply put, a federal court's reasoning-by-analogy is not a "settled" rule of state law.

contractual relations actions.  McCabe's complaint stated wrongful discharge, negligence, and intentional infliction of emotional distress causes of action.  The court explained that the wrongful discharge and negligence causes of action arose solely out of the plaintiff's contractual relationship with the employer-defendant.  As a result, the court cited to tortious interference with contract caselaw to explain that the individual defendants' conduct was protected by the manager's privilege.  Because the individual defendants' actions were privileged, they owed no duties to the plaintiff, thus defeating the wrongful discharge and negligence causes of action.  <u>Id.</u> at 1339.[5]  In addition, the court explained that the intentional infliction of emotional distress claim was facially inadequate.  <u>Id.</u> at 1340.

In short, it is irrelevant for present purposes that "Plaintiffs have failed to sufficiently allege or establish that the Individual Defendants received any personal financial advantage from their alleged

---

[5] As a side note, the Court wishes to point out that the <u>McCabe</u> court seems to have misapplied its own legal standard.  The <u>McCabe</u> court stated that fraudulent joinder requires that the "failure [to state a valid cause of action] is obvious according to the settled rules of the state."  <u>Id.</u> at 1338.  However, when deciding that the plaintiff had failed to state a valid cause of action against the individual defendants, the court cited only to a prior Ninth Circuit case (<u>Los Angeles Airways, Inc. v. Davis,</u> 687 F.2d 321 (9th Cir. 1982)) that explicitly noted that it was addressing an open question of state law rather than a settled rule.  <u>Id.</u>  As the <u>Davis</u> court stated: "Neither <u>Olivet</u> [<u>v. Frischling,</u> 104 Cal. App. 3d 831 (1980,] nor any other reported California decision has explicitly addressed the situation in which an advisor is alleged to have acted with a 'mixed motive,' i.e., with the intent to benefit his employer's interest as well as his own.  We must therefore resolve this question as we believe the California Supreme Court would if faced with the same facts."  <u>Davis</u>, 687 F.2d at 328.  Even today, the purportedly "settled" law discussed in <u>McCabe</u> remains frustratingly unclear.  <u>See</u> <u>Huynh v. Vu</u>, 111 Cal. App. 4th 1183, 1195 (2003) ("The scope of the manager's privilege, as developed under California's common law since <u>Olivet v. Frischling</u> was decided, **is neither clear nor consistent.**") (emphasis added).

1    conduct." (Defs.' Opp. at 11.)   Likewise, it is irrelevant that

2    Defendants have included declarations from each of the individual

3    Defendants stating that they only received ordinary compensation from

4    their employers.   (Id.)   The general rule in California is that an

5    agent is liable for his own torts, even if he committed the torts for

6    the benefit of his principal.

7         **D.   Defendants' Remaining Arguments about Defendant Roquet**

8         Defendants also argue that Plaintiff Sullivan's fraud claim

9    against Roquet fails under the parol evidence rule.   (Defs.' Opp. at

10   14.)   Plaintiffs point out that Sullivan did not personally sign the

11   franchise agreements containing the integration clause, and thus is not

12   necessarily bound by the contracts and/or barred from introducing

13   relevant parol evidence.   (Pls.' Reply at 6.)   In any event, contrary

14   to Defendants' arguments that the parol evidence rule bars claims of

15   fraud that are inconsistent with the terms of the agreement (Defs.'

16   Opp. at 14), Defendants' non-liability is far from "obvious" on this

17   point.   As courts and commentators routinely point out, "current

18   application of the fraud exception is unpredictable and leads to

19   confusion in California courts."   See, e.g., Alicia W. Macklin, *Note:*

20   *The Fraud Exception to the Parol Evidence Rule: Necessary Protection*

21   *for Fraud Victims or Loophole for Clever Parties?*, 82 S. Cal. L. Rev.

22   809, 811 (2009).   The "[c]ourts' unclear distinctions lead to

23   unpredictable litigation outcomes."   Id. at 811.   Needless to say, an

24   "unclear" and "unpredictable" rule is hardly a suitable basis for

25   satisfying the McCabe standard of "obvious" non-liability under

26   "settled" rules.   811 F.2d at 1336.

27

28

                                    19

Finally, Defendants argue that Plaintiffs' claims against Roquet are time-barred because the statute of limitations for fraud is three years, and the first fraudulent statements were made to Sullivan in 2001.  (Opp. at 19.)  However, Plaintiffs correctly point out that California recognizes the "discovery rule" for determining when a cause of action accrues, and it is possible that the fact-intensive discovery rule will save Plaintiffs' otherwise time-barred claims.  (Reply at 9.) As this Court has noted in another case, even **summary judgment** is a "disfavored vehicle" for deciding discovery rule issues, as the inquiry is "largely a factual issue" more properly decided by a jury.  <u>Grisham</u> <u>v. Philip Morris, Inc.</u>, __ F. Supp. 2d __, 2009 WL 4019366, at *3, 7 (C.D. Cal. 2009).  Obviously, if it is improper to decide an issue on summary judgment, the issue will rarely be "obvious" on the face of a complaint.

In any event, Plaintiffs also note that at least one of the allegations states that Sullivan acted in reliance on one of Roquet's misrepresentations "[o]n or around August 2007," (Compl. ¶ 119), which falls within the relevant three-year statute of limitations. Accordingly, Defendants' statute of limitations argument fails.

**E.   Summary Regarding Viability of the Allegations Against Roquet**

In short, there is a potentially viable cause of action against Defendant Roquet, and Defendants have not identified any "settled" law that renders these claims obviously meritless.  In the context of this Motion to Remand, these factual and legal uncertainties must be resolved in favor of Plaintiffs.  Accordingly, this Court cannot exercise jurisdiction over this dispute, as various Plaintiffs and

Defendant Sullivan are citizens of California.  See 28 U.S.C. §
1332(a)(1).  Remand is appropriate.

**V.   CONCLUSION**

     For the foregoing reasons, Plaintiffs' Motion is GRANTED.  The
Court ORDERS that the action be REMANDED to state court pursuant to 28
U.S.C. § 1447(c).


          IT IS SO ORDERED.


DATED:  March 3, 2010                    _____
                                              STEPHEN V. WILSON
                                         UNITED STATES DISTRICT JUDGE